Argued April 1, affirmed June 12, 1975

MARTIN, *Appellant, v.* FOSTER, *Respondent.*

536 P2d 422

*Thomas C. Sites,* of the firm of John H. Otting, Portland, argued the cause and filed briefs for appellant.

*Carrell F. Bradley,* of Schwenn, Bradley, Batchelor & Bailey, Hillsboro, argued the cause and filed a brief for respondent.

McALLISTER, J.

On March 1, 1974 plaintiff filed this action in Multnomah County to recover damages for injuries sustained in an automobile accident. On March 27, 1974 defendant filed an answer. It appears that sometime during July, 1974 plaintiff and her attorney James M. Pippin had differences which caused Mr. Pippin to advise plaintiff to get another attorney to handle her case.

This case was set for trial on October 1, 1974. On September 30, 1974, when plaintiff's case was called for assignment to a trial judge neither plaintiff nor an attorney representing her appeared. As a result, the presiding judge, on September 30th, signed a judgment of dismissal which was also entered on the same day.

On October 8, 1974, plaintiff's present counsel was substituted for Mr. Pippin and on the same day Mr. Sites filed a motion to reinstate the case as a pending and continuing case and to rescind the dismissal.

On October 28, 1974 the court denied plaintiff's motion to reinstate the case. Plaintiff appeals from the judgment of dismissal and the order denying her motion to reinstate the case.

It appears that there was a hearing on plaintiff's motion, but the record contains no transcript of that hearing. Plaintiff filed an affidavit in support of her motion and at plaintiff's request there are included in the trial court file three letters written by Mr. Pippin to plaintiff.

The first letter was dated July 22, 1974 and read as follows:

"To date, I have heard nothing from any other lawyer whom you might have contacted to represent you. Again, I would urge that you contact someone as quickly as possible to afford them a reasonable time in which to familiarize themself [sic] with

your file prior to the trial date, which should be coming up very shortly. As I have indicated to you before, I am willing to cooperate with this lawyer in any way that I can, but you must take the initiative and select the lawyer you want to represent you before I can do anything further."

The second letter was dated September 10, 1974 and read as follows:

"I still have heard nothing from you or any other lawyer whom you have contacted to represent you. As you know, I indicated to you some months ago that I was not going to continue to represent you on your personal injury claim against Mr. Foster. It is critical that you contact another lawyer immediately so he may begin reviewing and preparing your file for trial. It is impossible to properly prepare a case in one or two days, so please contact someone immediately.

"Secondly, if I do not hear from another lawyer, or if you have not made arrangements for someone to represent you within the next ten (10) days, I am going to apply to the Court for resignation as your attorney of record. This means unless you have another lawyer to pick up where I leave off, your claim will be dismissed by the Court.

"By this letter, I'm not trying to threaten you into settling your claim, but am only stressing to you the importance of getting another lawyer now. And, of course, as soon as you advise me as to who you have selected, I will be happy to cooperate with him in any way that I can.

"Please advise."

The third letter was dated September 24, 1974 and read as follows:

"As you know, I requested the court that I be allowed to withdraw as your attorney of record. The court would not permit me to do so at such a late date without your first having retained an-

other lawyer. Consequently, your case was left on for trial for October 1, 1974.

"The court asked me to advise you that unless you have retained another lawyer to represent you by Monday, September 30, 1974, your case will be dismissed and you will be barred from bringing any further action against Mr. Foster for the injuries you sustained in the accident. Again, I urge you to contact another lawyer immediately and have him notify me so I may forward to him your file."

In plaintiff's affidavit in support of her motion plaintiff stated that she took no action in response to Mr. Pippin's letters for a variety of reasons. For example, she stated:

"Mr. James M. Pippin, my former attorney in this case, told me to find another attorney in July of 1974. Subsequently, I received letters from him telling me to get another attorney, or that the case would be dismissed. Since Mr. Pippin was no longer my attorney, I believed that he could not have my case dismissed. I did not understand that it was the Court, and not Mr. Pippin that would dismiss my case. I thought Mr. Pippin was threatening to have my case dismissed by his own actions, and I did not understand that dismissal of the case would block me from ever being able to sue the defendant because of a statute of limitations."

She further stated that she was afraid to follow Mr. Pippin's advice "because I felt that he tried previously to have me sign papers that I did not agree with."

Her affidavit continued as follows:

"I felt that I had no time to look for another attorney to represent me in this matter during the months of July, August and September, 1974. I live in the country on a 1/3 acre and had no water all summer. I have been involved in a legal dispute all summer trying to get water for my land and

trying to recover another 1/3 acre of land that I feel is mine. I have been afraid to leave my property during the land and water disputes because of threats from my neighbor, who is the opposing party."

Plaintiff also said that she had left her home about September 25th and did not receive Mr. Pippin's letter of September 24th before she left. She said, however, that her daughter, who was staying in plaintiff's home, received the letter around the 26th of September. According to plaintiff her daughter phoned her about September 26th, "to talk to me about my letter from Mr. Pippin." Plaintiff stated: "I was upset and did not believe that Mr. Pippin could allow a trial date to be set and force my case to be dismissed, when he was no longer my attorney." According to plaintiff she telephoned another lawyer on either September 30th or October first, who told her that he would look over her case, but who, a few days later, told her that her case had been dismissed and that he would not handle it. Plaintiff then went to the office of the Oregon State Bar with the result that she contacted her present attorney, who filed the motion to have her case reinstated.

Plaintiff's affidavit summarized the reasons why she did not take any action in response to Mr. Pippin's letter as follows:

"My health has been poor this summer, and I have not been able to get around as well as I normally could, and I was not able to handle many of my business matters. I had to put many things off. This was a further reason why I did not contact another attorney during the summer months and September.

"Any neglect on my part in this case was because I never really understood what the legal consequences of a dismissal would be, and because of the other problems during the summer that occu-

pied my full time, and because I was afraid to trust Mr. Pippin's advice, and finally because I thought that it was Mr. Pippin who was going to have my case dismissed, and I didn't think he could do that, and because of my health problems."

The order of October 28, 1974 denying the motion to reinstate the case recited that the court had read "the affidavit of the plaintiff, the letters submitted by her attorney and the testimony offered by the defendant". The trial court denied the motion and we affirm. We conclude that under the facts of this case the trial court did not abuse its discretion.

The judgment is affirmed.